## Joseph V. Shaw v. Robert Chambers.

*Equity—Injunction against ejectment suit—Title by estoppel—Declarations of joint heirs—Conversion of realty into personalty—Title by will.*

One who claims the legal title to land under a will has no reason for resorting to equity to restrain an action of ejectment against him, except when the common law is inadequate to give full relief.

Injunction may sometimes be sought to restrain a suit at law where the latter only involves a portion of the controversy, or is likely to leave an apparent record title clouding the legal title in issue.

A mere equitable estoppel is not needed to aid a legal title; proof of equities becomes important when the legal title is defective, or where it is proposed to assail it.

Spoken words will not by estoppel establish a title to land in the absence of the formal conveyances required by the Statute of Frauds, unless in cases of doubtful and disputed claims and cases where the facts are not of record and not readily accessible.

The declaration of one of several heirs as to the title to property cannot bind the interests of the others.

Equity will treat real property as converted into personalty where a will by which it is devised absolutely and without conditions directs that it shall be exchanged for money and interest-bearing securities; and it will so regard it for all the purposes of the will and of the settlement of the estate even though the exchange was never actually made and though the beneficiaries may have died. And so far as it is not disposed of by the will it would pass under the Statute of Distributions and not under that of Descents. But it would not be personalty for the purpose of any remedies unconnected with the conversion, nor in the hands of those to whom it was transmitted afterwards.

A man left all his property to his wife, providing, however, that if she should have any children who should reach majority it should be equally divided between her and the children, and that it should be converted into money and securities. She had a posthumous child which died an infant and she died not long afterwards leaving the property to a sister who sold it. But a brother of the original testator claimed it under the Statute of Descents and brought ejectment against the purchaser who sought to enjoin his action. *Held,* that the title was a legal question and the bill should be dismissed.

Appeal from Genesee. Submitted April 11. Decided June 7.

BILL to enjoin ejectment suit.    Dismissal affirmed.

*Long & Gold* and *Aug. C. Baldwin* for complainant.

*W. H. Wells, Wm. Newton* and *A. Pond* for defendant.

COOLEY, J.    The merits of this suit involve the title to a
farm in the county of Genesee which is claimed by the
parties respectively.    When the suit was instituted com-
plainant was in possession, and defendant was prosecuting a
suit in ejectment to recover it.    The bill in this case seeks
a perpetual injunction against the suit at law, and a decree
quieting complainant's title as against defendant's claim.

Both parties claim under Enoch N. Chambers, who died
seized of the lands in September, 1860, leaving a will of
which the important provision is the following:

"I give and bequeath to my wife, Mary E. Chambers, all
my real estate, land, tenements, etc., together with all my
chattels, personal moneys, credits, etc., that shall remain
after discharging my legal debts; to have and hold the same
in sole possession, and to enjoy the sole use and benefit
thereof, during the term of her natural life: provided, that
if any heir or heirs of my body shall hereafter be born to
her, such heir or heirs shall receive out of such property
above named, or out of the proceeds or annual income
thereof, all needful and proper support, maintenance and
education, during the minority of such heir or heirs, and
until it or they shall have attained unto legal age.    I do
hereby further direct that, in case of the birth and arrival
at legal age of any such heir or heirs above named, such of
the above-described property, or of the proceeds thereof, as
shall remain at that time unexpended, shall be then divided
and given, the one-half thereof to such heir or heirs, and
one-half thereof to its (their) mother, the said Mary E.
Chambers: provided that if the said Mary E. Chambers
shall be at that time deceased, then no division of said prop-
erty shall be made, but the whole thereof shall be given into
and remain in the possession of such heir or heirs.    And I
do hereby further direct, that for the more efficient execu-
tion of the above provisions, and for the purpose of securing
a larger income unto and a better support for the said Mary
E. Chambers, and the said heir or heirs (if any), that the
above-described property, real and personal, shall be ex-
changed by the administrator of this instrument for money

or for interest-bearing securities, bonds, mortgages, etc., at such times and in such manner as shall be in their discretion desirable." The will was duly probated.

The testator left no child surviving him, but a posthumous son was born in December, 1860, to whom the name of Enoch A. Chambers was given. This son died April 3, 1862. Mrs. Chambers survived both husband and son, and died September 29, 1863, leaving a will which was duly probated, whereby she devised the land in question to her sister Ann McAllister. McAllister went into possession under the devise, and in December, 1865, sold and conveyed the land to Allen B. Jones, who in turn sold and conveyed to complainant in June, 1872. This constitutes complainant's title, which he avers in the bill to be a title in fee-simple under the will of Enoch N. Chambers.

When Enoch N. Chambers deceased, several brothers and sisters and children of deceased brothers and sisters survived him. Defendant is one of the brothers, and he has obtained from the other brothers and sisters, and from the heirs of those deceased, a conveyance of such rights as they may have in the land in controversy. His claim is that by the Statute of Descents the inheritance passed on the death of Enoch N. Chambers to the brothers and sisters, subject to the devise of a life estate to the widow, and to the further and contingent devise which was to take effect on a child arriving at legal age, and which was defeated by the death of Mrs. Chambers and the child. This constitutes the title of defendant upon which he relied in his action of eject-ment.

Besides relying upon his supposed legal title, complainant sets up as against defendant matter of estoppel *in pais*. He avers that before Jones purchased of McAllister he went to defendant and inquired of him if he had any claim or interest in the land, or if any one other than McAllister had any interest, claim or title; saying to him that he desired to know before accepting a deed or making any pay-ment; and that defendant expressly and distinctly assured him that he had no interest in or claim or right in or to the land, and that he said to Jones in substance "we make no

claim to the land; go on and buy it and pay for it: we have found out we cannot hold it." He further avers that in reliance upon these representations Jones made his purchase and paid the price.

The prayer of the bill is that defendant be perpetually restrained and enjoined from setting up any claim to said land, and from asserting title to or claiming possession thereof, and from further prosecuting the suit in ejectment.

If complainant is right in claiming the legal title under the wills of Enoch N. and Mary E. Chambers, it is very apparent that he has no standing in a court of equity. His defence at law in that case would be perfect, and there is no justification for causing the trouble and expense of two suits when one would be adequate for all the purposes of justice. The proper tribunal for the trial of titles to land is the common-law court; and the equitable jurisdiction is to be invoked only when the common law is inadequate to give full relief. *Bennett v. Nichols* 12 Mich. 22; *Teft v. Stewart* 31 Mich. 367; *Mears v. Howarth* 34 Mich. 19; *Bay City Bridge Co. v. Van Etten* 36 Mich. 310. If the suit at law involves but a portion of the controversy; *Eaton v. Trowbridge* 38 Mich. 454; or if after its determination there may remain an apparent title of record clouding the legal title (*Flint & Pere Marquette R. Co. v. Gordon* 41 Mich. 420) there may be just occasion for invoking the aid of equity; but these are exceptional cases, and the circumstances which make them so do not exist here.

In this aspect of the case the facts supposed to constitute an equitable estoppel become of no importance. If complainant has the legal title, it is made no better by acts of defendant which ought in equity to preclude his questioning it. When the legal title alone is in question it needs no support from equities; it stands impregnable in its own strength and is presumed to embrace all equities. Proof of equities becomes important when the legal title is defective, or when it is proposed to assail it.

It is suggested, however, that if complainant shall prove to be in error in claiming the strict legal title, the claim of

that title should not preclude his setting up and relying upon the equitable estoppel. To this suggestion it is answered that estoppel *in pais* cannot be admitted to overthrow a title to land. *Hayes v. Livingston* 34 Mich. 384; *Nims v. Sherman* 43 Mich. 45; *White v. Hapeman* id. 267. This is true as a general rule: spoken words cannot be received as a substitute for the formal conveyance which the statute of frauds requires. Cases of doubtful and disputed claims, and cases where the facts are not of record and not readily accessible, may present exceptions. *Brant v. Virginia Coal Co.* 93 U. S. 326. But one fatal objection to the supposed estoppel is as good as many, and in this case it is enough to say it fails on the evidence. Jones does not pretend to have sought information from any brother or sister of Enoch N. Chambers except the defendant, and as a man of sense he must have known that what one of several supposed heirs might say could bind the interest of nobody but himself. But defendant denies the statements imputed to him; and we have word against word, with quite as much circumstantial support for the denial as for the assertion. The supposed estoppel may therefore be dismissed from consideration.

It is further suggested that the will, by the direction that the property should all be exchanged for moneys and interest-bearing securities, effected an equitable conversion of the realty into personalty, and fixed upon it for all purposes of succession, distribution and transfer the legal character of personalty, and that it must be dealt with as such in this litigation and not as land. That a conversion was effected is no doubt true. The direction that the exchange should be made was imperative and without condition, and though it was never in fact made, equity must consider that done which the testator lawfully directed. *Doughty v. Bull* 2 P. Wms. 320; *Wheldale v. Partridge* 5 Ves. 396; *Lane v. Goudge* 9 Ves. 225; *Thornton v. Hawley* 10 Ves. 129; *Kirkman v. Miles* 13 Ves. 338; *Ward v. Arch* 15 Sim. 389; *Craig v. Leslie* 3 Wheat. 563; *Tazewell v. Smith* 1 Rand. 313; *Bunce v. VanderGrift* 8 Paige 37; *Kane v.*

*Gott* 24 Wend. 641; *Bogert v. Hertell* 4 Hill 492; *Stagg v. Jackson* 1 N. Y. 206; *Hood v. Hood* 85 N. Y. 561; *Holland v. Cruft* 3 Gray 162; *Wurts v. Page* 19 N. J. Eq. 365; *Dodge v. Williams* 46 Wis. 70. The direction for conversion was absolute; out and out; irrespective of all contingencies; and therefore sufficient to meet the some-what particular requirements of the Pennsylvania cases; *Bleight v. The Bank* 10 Penn. St. 131; *Parkinson's Appeal* 32 Penn. St. 455; *Anewalt's Appeal* 42 Penn. St. 414; *Jones v. Caldwell* 97 Penn. St. 42; and the death of the beneficiaries did not affect the application of the doctrine. *Craig v. Leslie* 3 Wheat. 579; *Marsh v. Wheeler* 2 Edw. Ch. 157; *Phelps v. Pond* 23 N. Y. 69; *Evans' Appeal* 63 Penn. St. 183.

But admit the conversion, and the case still is not determined in favor of complainant. The equitable conversion fixed upon the land the character of personalty for some purposes but not for all. It was personalty in the hands of the executors of Enoch N. Chambers for all the purposes of his will and of the settlement of his estate, and so far as it was not disposed of by the will, it passed under the statute of distributions and not under the statute of descents. But it was never personalty for any purpose of remedy unconnected with the conversion; and in the hands of the person or persons who succeeded to it when Mrs. Chambers and the child were dead, it would not be personalty but realty, and real, not personal, actions would be brought to determine the title. The question therefore in the ejectment suit, or in any other suit involving the title, would not be whether the land had or had not at one time had the quality of personalty impressed upon it, and been transmitted as such under the statute of distributions; but the question would be to whom in any manner it had been transmitted, and who now, when unquestionably it is to be considered and dealt with according to its proper nature as realty, is entitled to the possession, enjoyment and control.

This is a legal question, and its solution depends upon the proper construction of the will of Enoch N. Chambers.

The legal controversy cannot be transferred to a court of equity.

The dismissal of the bill was right and its decree must be affirmed with costs.

The other Justices concurred